UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD MIGYANKO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>G.F. MANAGEMENT, LLC,<br><br>Defendant. | Case No. 2:20-cv-944<br><br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff Ronald Migyanko, on behalf of himself and the proposed class (defined below), brings this action against G.F. Management, LLC. d/b/a GF Hotels & Resorts. ("GF Management" or "Defendant") and alleges as follows:

## INTRODUCTION

1. For almost 30 years, the Americans with Disabilities Act ("ADA") has required that individuals with disabilities be provided full and equal access to the goods, services and facilities provided by hotel owners and operators.

2. This mandate requires hotel businesses to provide patrons with accommodations that are readily accessible to individuals with disabilities.

3. According to the 2019 J.D. Power North America Hotel Guest Satisfaction Index Study, the quality of sleep is the top variable determining guest satisfaction during a hotel stay.[1]

---

[1] Available at https://www.jdpower.com/business/press-releases/2019-north-america-hotel-guest-satisfaction-index-nagsi-study (Last retrieved 6/24/2020).

1

4. However, many hotel operators, including Defendant, do not offer sleeping beds that are accessible to hotel patrons with disabilities. This is a fundamental violation of the general accessibility mandate of the ADA:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

5. GF Management operates various hotels throughout the United States.

6. In failing to provide guest rooms with accessible sleeping surfaces, Defendant has engaged in illegal discrimination, excluded and deterred individuals with disabilities from patronizing Defendant's hotels, and denied individuals with disabilities full and equal access to the goods, services, facilities, privileges, advantages and accommodations that Defendant offers to the public.

7. Defendant's discrimination violated and continues to violate Title III of the ADA, and unless Defendant is required to change its policies and practices so that Defendant's goods, services, facilities, privileges, advantages and accommodations are accessible to individuals with disabilities, Plaintiff and the proposed class will continue to be denied full and equal access to Defendant's hotels and will be deterred from using Defendant's hotels.

8. In accordance with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

  a) Defendant offers the required number of rooms with accessible sleeping surfaces at each of the hotels, consistent with the ADA's room dispersal requirements; and

  b) Defendant changes its policies and practices necessary to afford all offered goods, services, facilities, privileges, advantages and accommodation to individuals with disabilities.

9. Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision (b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . . . Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## THE ADA AND ACCESSIBLE TRANSIENT LODGING

10. The ADA was signed into law by President George H.W. Bush nearly thirty years ago with the intent to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

11. When the ADA's implementing regulations were revised in 2010, a regulatory impact analysis found that "[s]ome of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities." *Final Regulatory Impact Analysis of the Final Revised Regulations Implementing Titles II and III of the ADA, Including Revised ADA Standards for Accessible Design*, U.S. Dep't

Just. (July 3, 2010), p. 138.[2]

12. Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

13. Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); from affording goods, services, facilities, privileges, advantages, or accommodations that are not equal to those afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii)); from providing goods, services, facilities, privileges, advantages, or accommodations that are separate from those provided to other individuals (42 U.S.C. § 12182(b)(1)(A)(iii)); or from utilizing methods of administration that have the effect of discriminating on the basis of a disability (42 U.S.C. § 12182(b)(1)(D)).

14. The ADA and its implementing regulations also define prohibited discrimination to include the following: (i) the failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992 (28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv)); (ii) the failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities (28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1)); and (iii) for alterations to public accommodations made after January 26, 1992, the failure to make alterations so that the altered portions of the public accommodation are readily

---

[2] Available at http://www.ada.gov/regs2010/RIA_2010regs/DOJ%20ADA%20Final%20RIA.pdf (Last retrieved 6/24/2020).

accessible to and usable by individuals with disabilities (28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2)).

15. The Department of Justice, pursuant to 42 U.S.C. § 12186(b), has promulgated the ADA Accessibility Guidelines ("ADAAG") in implementing Title III of the ADA. There are two active ADAAGs that set forth the technical requirements that a public accommodation must meet in order to be "readily accessible": the 1991 ADAAG Standards, 28 C.F.R. § pt. 36, App. D ("1991 Standards"), and the 2010 ADAAG Standards, 36 C.F.R. § pt. 1191, App. D ("2010 Standards").

16. Both the 1991 Standards and the 2010 Standards require places of transient lodging, such as hotels, to provide a certain number of accessible sleeping rooms and suites, determined on a sliding scale based on the total number of guest rooms offered. 1991 Standards §§ 9.1.2-3; 2010 Standards §§ 224.2-4.

17. The number of accessible guest rooms required is as follows:

| Total Number of Guest Rooms Provided | Minimum Number of Required Accessible Rooms Without Roll-in Showers | Minimum Number of Required Accessible Rooms with Roll-in Showers | Minimum Number of Required Rooms with Communication Features (2010 Standards) | Minimum Number of Required Rooms with Communication Features (1991 Standards) |
|---|---|---|---|---|
| 1 to 25 | 1 | 0 | 2[3] | 1 |
| 26 to 50 | 2 | 0 | 4 | 2 |
| 51 to 75 | 3 | 1 | 7 | 3 |
| 76 to 100 | 4 | 1 | 9 | 4 |
| 101 to 150 | 5 | 2 | 12 | 5 |

---

[3] The 2010 Standards uses a range of Total Number of Guest Rooms Provided of "2 to 25" for communication feature requirements, versus the 1991 Standards' "1 to 25".

| | | | | |
|---|---|---|---|---|
| 151 to 200 | 6 | 2 | 14 | 6 |
| 201 to 300 | 7 | 3 | 17 | 7 |
| 301 to 400 | 8 | 4 | 20 | 8 |
| 401 to 500 | 9 | 4 | 22 | 9 |
| 501 to 1000 | 2 percent of total | 1 percent of total | 5 percent of total | 2 percent of total |
| 1001 and over | 20, plus 1 for each 100, or fraction thereof, over 1000 | 10, plus 1 for each 100, or fraction thereof, over 1000 | 50, plus 3 for each 100 over 1000 | 20, plus 1 for each 100 over 1000 |

*Id.*

18. In addition to requiring the provision of accessible rooms, the ADA requires hotels to offer accessible guest rooms with an equivalent range of options and amenities that are offered in guest rooms available to individuals without disabilities.

19. The 1991 Standards require accessible rooms to "be dispersed among the various classes of sleeping accommodations available to patrons of the place of transient lodging. Factors to be considered include room size, cost, amenities provided, and the number of beds provided." 1991 Standards § 9.1.4(1).

20. The 2010 Standards are substantially similar, and require that accessible rooms "shall be dispersed among the various classes of guest rooms, and shall provide choices of types of guest rooms, number of beds, and other amenities comparable to the choices provided to other guests. Where the minimum number of guest rooms required to comply with 806 is not sufficient to allow for complete dispersion, guest rooms shall be dispersed in the following priority: guest room type, number of beds, and amenities. At least one guest room required to provide mobility features with 806.2 shall also provide communication features complying with 806.3. Not more than 10 percent of guest rooms required to provide mobility features complying with 806.2 shall

be used to satisfy the minimum number of guest rooms required to provide communication features complying with 806.3." 2010 Standards § 224.5.

21. The Advisory to Section 224.5 states that "[f]actors to be considered in providing an equivalent range of options may include, but are not limited to, room size, bed size, cost, view, bathroom fixtures such as hot tubs and spas, smoking and nonsmoking, and the number of rooms provided."

22. The Department of Justice explained in its Guidance on the 2010 Standards that the "dispersion requirement is intended to effectuate Congress' directive that a percentage of each class of hotel rooms is to be fully accessible to persons with disabilities. *See* H.R. Rep. No. 101-485 (II) at 391. Accordingly, the promise of the ADA in this instance is that persons with disabilities will have an equal opportunity to benefit from the various options available to hotel guests without disabilities, from single occupancy guest rooms with limited features (and accompanying limited price tags) to luxury suites with lavish features and choices."

23. The ADA requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

24. The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

25. Consistent with the regulatory guidance discussed above, Defendant must not only offer accessible guest rooms that include accessible sleeping surfaces, but Defendant must offer rooms with accessible sleeping surfaces that are dispersed among all of its room categories.

## **JURISDICTION AND VENUE**

26. The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

27. Personal jurisdiction exists because Defendant owns, manages and/or operates a hotel located in Butler County.

28. Venue in the Western District of Pennsylvania is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred.

## **PARTIES**

29. Plaintiff Migyanko, at all times relevant hereto, is and was a resident of Butler County, Pennsylvania.

30. Plaintiff is a wheelchair user who is limited in the major life activity of walking.

31. Plaintiff is a tester in this litigation and a consumer who wishes to access Defendant's goods and services. *See, e.g., Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 457 (4th Cir. 2017); *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.,* 867 F.3d 1093, 1102 (9th Cir. 2017); *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211-12 (10th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372-74 (1982).

32. Defendant G.F. Management, LLC is a Pennsylvania Corporation with its principal place of business in Philadelphia, PA .

## FACTUAL ALLEGATIONS

33. Defendant owns, manages and/or operates hotels throughout the United States.

34. As a fundamental part of these operations, Defendant provides hotel rooms with sleeping beds to its customers.

35. Within the applicable limitations period, Plaintiff called the Hilton Garden Inn located in Cranberry Township, Pennsylvania ("Cranberry Garden Inn") and was told by an agent of Defendant that the Cranberry Garden Inn provides accessible rooms for its guests but that the sleeping beds in these rooms have a sleeping surface that is 36 inches from the floor.

36. The seat height for Plaintiff's wheelchair is approximately 18 inches from the ground, and the average height of wheelchair seats generally is 18-20 inches.

37. The sleeping surfaces of the beds in Defendant's accessible rooms are sufficiently high that they render it difficult if not impossible for Plaintiff to independently transfer from his wheelchair to the bed.

38. Plaintiff can safely, easily, and independently transfer to horizontal surfaces that are approximately the same height as his wheelchair seat, such as dining chairs, toilet seats, benches, and lower passenger vehicle seats.

39. Transferring to horizontal surfaces that are significantly higher than his wheelchair seat is difficult and dangerous for Plaintiff; he must hoist his bodyweight up to the height of the higher surface using primarily upper body strength.

40. Plaintiff risks injury due to falling or straining his shoulders when transferring to higher horizontal surfaces, such as the beds in the purportedly accessible rooms in the Cranberry Garden Inn.

41. An investigation performed on Plaintiff's behalf confirmed that the bed heights in Defendant's accessible rooms are, in many cases, between 25 and 36 inches from the ground and are therefore not readily accessible to Plaintiff and the proposed class.

42. The investigation performed on behalf of Plaintiff further confirmed that, in addition to the Cranberry Garden Inn, Defendant owns, manages and/or operates a substantial number of other hotels in the United States that offer purportedly accessible rooms with bed sleeping surfaces that are too high to be accessible to wheelchair or scooter users.

43. These hotels include, but are not limited to, the following locations:

  A. 3122 Lebanon Church Rd, West Mifflin, PA 15122;

  B. 353 E Louetta Road, Spring, TX 77373;

  C. 1733 South Anaheim Boulevard, Anaheim, CA 92805;

  D. 200 Gateway Drive, Bethlehem, PA;

  E. 3650 S 72nd Street, Omaha, NE 68124;

  F. 1255 Walker Ave, East Point, GA 30344;

  G. 200 Fairfield Lane, Butler, PA 16001;

  H. 720 Eagleview Blvd., Exton, PA;

  I. 801 University Drive East, College Station, TX 77840;

  J. 606 Emily Drive, Clarksburg, WV 26301;

  K. 150 Suncrest Towne Centre Dr, Morgantown, WV 26505;

  L. 705 Currency Circle, Lake Mary, FL 32746;

  M. 617 W Expy 83, McAllen, TX 78503;

  N. 301 W Lombard Street, Baltimore, MD 21201;

  O. 561 North Dupont Highway, Dover, DE 19901;

      P.      2953 Ridge Way , Lake Wales, FL 33859;

      Q.      279 Kadire Drive, Marion, NC 28752;

      R.      135 West Gate Drive, Huntington, NY 11743;

      S.      903 Dulaney Valley Road, Towson, MD 21204;

      T.      375 S Mooreland Rd, Brookfield, WI 53005;

      U.      Springhill Suites Philadelphia West Chester/Exton; and

      V.      400 Park Boulevard, Itasca, IL 60143.

44. Defendant's policy and practice of not providing individuals with disabilities hotel rooms with accessible sleeping surfaces is discriminatory and in violation of the ADA.

45. Though Plaintiff is serving as a tester in this case, he would like to stay at hotels operated by Defendant in the future and use the hotels' sleeping beds.

46. However, the lack of accessible sleeping beds has deterred Plaintiff from staying at the hotels managed by Defendant.

47. Plaintiff has been, and in the absence of an injunction will continue to be, injured by Defendant's policy and practice of failing to provide accessible sleeping beds to persons with disabilities.

## CLASS ALLEGATIONS

48. Plaintiff brings this action under Rule 23(a) and (b)(2) of the federal rules of civil procedure and on behalf of himself and the following class: "All individuals who use wheelchairs or scooters for mobility and who have been, or in the future will be, denied the full and equal enjoyment of accessible sleeping surfaces (beds) at hotels owned, operated and/or controlled by Defendant.

49. <u>Numerosity:</u> The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and the Court, and will facilitate judicial economy.

50. <u>Typicality:</u> Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

51. <u>Common Questions of Fact and Law:</u> There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's goods, services and facilities due to the policies and practices described above. The questions of law and fact common to the class include, but are not limited to:

> A. Whether Defendant owns, operates and/or controls places of public accommodation subject to Title III of the ADA, and its implementing regulations;
>
> B. Whether Defendant provides accessible sleeping surfaces in its hotel rooms;
>
> C. Whether Defendant adequately disperses guest rooms that have accessible sleeping surfaces; and
>
> D. Whether Defendant's policies and practices discriminate against Plaintiff and the putative class members in violation of Title III of the ADA and its implementing regulations.

52. <u>Adequacy of Representation:</u> Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will

fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

53. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## CAUSE OF ACTION
### For Violations of 42 U.S.C. §§ 12181, *et seq.*

54. Plaintiff incorporates by reference each and every allegation herein.

55. Plaintiff brings this claim individually and on behalf of the class.

56. Plaintiff is an individual with a disability under the ADA. 42 U.S.C. § 12102(1)(A).

57. Defendant provides public accommodations under the ADA. 42 U.S.C. § 12181(7).

58. Title III of the ADA prohibits discrimination against individuals with disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

59. Defendant operates hotels, or "places lodging," that are places of public accommodation under Title III of the ADA. Id.

60. Defendant has engaged in illegal disability discrimination by, without limitation, failing to ensure that the beds or sleeping surfaces in use at the hotels it manages and/or operates are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs,.

61. Moreover, by failing to provide beds or sleeping surfaces, Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

    a) denying individuals with mobility disabilities opportunities to participate in and benefit from the goods, services and facilities available at Defendant's hotels;

    b) affording individuals with mobility disabilities unequal access to goods, services or facilities;

    c) utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuating the discrimination of others who are subject to common administrative control; and

    d) failing to make reasonable modifications in policies, practices, or procedures where necessary to afford services, privileges, advantages, or accommodations to individuals with mobility disabilities.

62. Defendant's ongoing and continuing violations of Title III have caused, and in the absence to an injunction will continue to cause harm to the Plaintiff and the class.

63. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment as follows:

    a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant failed to take action reasonably calculated

to ensure that Defendant's beds or sleeping surfaces were fully accessible to, and independently usable by, individuals with visual disabilities;

    b.    A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its beds and sleeping surfaces into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that those beds and sleeping surfaces are fully accessible to, and independently usable by, individuals with disabilities, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

    c.    An Order Certifying the proposed class, naming Plaintiff as the representative of the class, and designating counsel for Plaintiff as class counsel;

    d.    Payment of costs and reasonable attorneys' fees as provided for by law; and

    e.    Such other additional or alternative relief as the Court finds just and proper.

Dated: June 24, 2020

Respectfully submitted,

*/s/ R Bruce Carlson*
R. Bruce Carlson
bcarlson@carlsonlynch.com
Kelly K. Iverson
kiverson@carlsonlynch.com
CARLSON LYNCH, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh PA, 15222
(412) 322-9243